UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES STERN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:09-CV-2028 CAS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court pursuant to the Report and Recommendation of United States Magistrate Judge David D. Noce, filed January 31, 2011. See 28 U.S.C. § 636(b). The Magistrate Judge recommended that the decision of the Commissioner denying plaintiff's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383b, be affirmed.[1] Plaintiff filed objections to the Magistrate Judge's Report and Recommendation. Defendant did not respond to the objections.

"[W]hen a party objects to the report and recommendation of a magistrate judge concerning a dispositive matter, '[a] judge of the court shall make a de novo review determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" United States v. Lothridge, 324 F.3d 599, 600 (8th Cir. 2003) (quoting § 636(b)(1)). Upon de novo review of plaintiff's objections and the record in this matter, the Court finds that it concurs

---

[1]As the Magistrate Judge noted, the record indicates that plaintiff applied for child's disability benefits, but at the hearing, the ALJ noted that there was no such application before him. In his objections, plaintiff does not challenge the nature of plaintiff's application or the framework under which the ALJ analyzed it.

in the recommendation of the Magistrate Judge. For the following reasons, the Court will affirm the decision of the Commissioner.

## I. Discussion

In his objections, plaintiff essentially renews five of the arguments he made to the Magistrate Judge in favor of reversing the decision of the administrative law judge ("ALJ"). Plaintiff argues that (1) the ALJ failed to give proper weight to the opinion of Dr. Gooch, a consulting physician, and the GAF score she assigned; (2) the ALJ improperly discounted the opinion of Dr. Fucetola, a consulting doctor; (3) the ALJ improperly discounted the opinion of Dr. Florian, a treating doctor; (4) the ALJ and Magistrate Judge mischaracterized the medical records and findings of plaintiff's treating physician, Dr. Rehmani; and (5) the ALJ failed to include in his residual functional capacity ("RFC") determination plaintiff's limitations with regard to memory, attention, and concentration.

The issue before the Court is whether substantial evidence supports the Commissioner's final determination that plaintiff was not disabled. Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992). Substantial evidence is that which a reasonable mind might accept as adequate to support the Commissioner's conclusions. Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996). The possibility of drawing two inconsistent conclusions from the evidence does not prevent the Commissioner's findings from being supported by substantial evidence. Thus, even if there is substantial evidence which would support a decision opposite to that of the Commissioner, the Court must affirm his decision as long as there is substantial evidence in favor of his opinion. Jones, 86 F.3d at 826.

### A. Dr. Gooch's Opinion

On September 27, 2007, plaintiff was seen by Mary V. Gooch, Ph.D., a licensed psychologist. Dr. Gooch conducted a structured clinical interview and administered a number of tests to determine plaintiff's level of cognitive functioning. Tr. 257. The test results revealed plaintiff was within the low average range of intellectual abilities. Tr. 261. The doctor found plaintiff's performance on the math portion of the testing met the criteria for a learning disability. Id. She also noted that there was behavioral evidence of Attention Deficit Hyperactivity Disorder ("ADHD") in plaintiff's "fidgeting and restlessness, burried (sic) in responses, varying motivation, tendency to give up easily, and varying levels of effort." Tr. 261. She also noted that plaintiff "appeared to understand all directions quickly and easily. He appeared attentive to directions and was able to stay on task in this one on one structured situation." Tr. 258. In her conclusion, Dr. Gooch diagnosed plaintiff with, among other things, mathematics disorder, ADHD, "Bipolar Disorder (currently in process of being ruled out)," occupational problems, and educational problems. Dr. Gooch assessed plaintiff a GAF score of 50.[2] Tr. 50.

In his decision, the ALJ did not entirely discredit Dr. Gooch's opinion, but he did give her opinion "nominal weight" because, among other things, she was a consulting doctor. As noted by the Magistrate Judge, the opinion of a consulting doctor, who examines a claimant once, generally

---

[2] A GAF score, short for Global Assessment of Functioning, helps summarize a patient's overall ability to function. A GAF score has two components. The first component covers symptom severity. The second component covers functioning. A patient's GAF score represents the worst of the two components. On the GAF scale, a score from 41 to 50 represents serious symptoms (such as thoughts of suicide, severe obsessional rituals, frequent shoplifting), or any serious impairment in social, occupational, or school functioning (such as the inability to make friends or keep a job). American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th ed. 2000).

receives very little weight. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998). The ALJ also found that the level of limitation suggested by the GAF score Dr. Gooch had assigned plaintiff was not supported by her own records. Like the Magistrate Judge and ALJ, the Court finds there was little clinical findings in Dr. Gooch's records to support such a low score. Furthermore, the ALJ found Dr. Gooch's assigned GAF score of 50 was inconsistent with her notes in that plaintiff participated in the testing, easily followed directions, was able to remain attentive and stay on task, as well as with plaintiff's test results, which yielded low average range intellectual abilities. It was not error for the ALJ to have discounted the low GAF score on these bases. Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir.2000) (a doctor's own inconsistencies may undermine his or her opinion and diminish or eliminate the weight given his or her opinions).

In his objections, plaintiff argues that the record as a whole supports a GAF score at least as low as 50. Plaintiff cites treatment notes from 2005 wherein his treating psychiatrist, Dr. Schulman, made such notations as plaintiff was "feeling more depress lately," and "he doesn't feel like he's good enough," that plaintiff "hated school, it's so stressful." In addition, plaintiff points out there were reports in Dr. Schulman's records of increased anger, inability to get to sleep and breaking things. First, it does not necessarily follow that these notations are substantial evidence that plaintiff had a GAF score as low as 50. But more importantly, these are just threads from a thick record. There is also evidence from Dr. Schulman that would indicate plaintiff had a higher GAF score. For instance, in 2006 Dr. Schulman wrote that plaintiff was "sleeping OK" and his mood was "pretty good"; that he was taking medication which "really helps"; and that he feels "normal." Tr. 276. Dr.

Schulman noted that on March 15, 2006, plaintiff was "happier, going better, working harder, making progress, getting more work done, and staying on task better." Tr. 278.

In support of the low GAF score, plaintiff also points to a cognitive evaluation which noted numerous impairments, including that plaintiff was "maximally impaired" in two out of three areas of attention and in all six areas of executive function. Tr. 449. The Court does not find this report to be persuasive. The report, which is dated September 20, 2007, consists of a checklist with little or no explanation of the findings. Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010) (finding the ALJ had properly discounted a treating physician's opinion that consisted of several checklist forms, cited no medical evidence, and provided "little to no elaboration."). See also Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001) ("the checklist format, generality, and incompleteness of the [RFC] assessments limit their evidentiary value."). Morever, the report was not completed by an acceptable medical source, but rather it appears to have completed by someone with a masters degree in speech language pathology. 20 C.F.R. §§ 404.1513(a), 416.913(a) (qualified speech-language pathologists are acceptable medical sources for the purpose of establishing speech or language impairments only); Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005) ("A therapist is not an 'acceptable medical source' to establish 'a medically determinable impairment.'").

While there may be evidence in the record that 50 was an accurate GAF score, there is substantial evidence that plaintiff was not so limited.[3] As the Eight Circuit has instructed, even if there is evidence to the contrary, the Court must affirm the Commissioner's decision as long as there is substantial evidence in favor of his opinion. Jones, 86 F.3d at 826.

---

[3]Plaintiff's treating psychiatrist, Dr. Rehmani, assigned plaintiff a GAF score of 50-60 when he began his treatment in October 2007. Tr. 477. And as noted below, plaintiff's symptoms improved under Dr. Rehmani's care.

5

### B. Dr. Fucetola's Opinion

On March 26, 2007, plaintiff was seen by Robert Fucetola, Ph.D., who was an associate professor of neurology at Washington University. Tr. 325. As the ALJ and Magistrate Judge noted, Dr. Fucetola found plaintiff had a number of cognitive deficits. Upon testing, plaintiff had marked impairment with respect to sustained attention, his executive abilities were moderately impaired, and his anterograde memory – that is, new learning capacity – was significantly impaired. Tr. 327. Dr. Fucetola found plaintiff's simple auditory attention and working memory were low average. Id. Dr. Fucetola wrote that plaintiff was oriented and his speech was fluent and articulate. He noted that plaintiff's thought process appeared organized. Plaintiff was attentive throughout the evaluation, but he was occasionally distracted. According to the doctors, plaintiff easily understood the test directions. Tr. 326. It was noted that social interactions with the examiners were generally appropriate. Tr. 328. In his summary, Dr. Fucetola found that completion of college-level work would be daunting, if not unrealistic for plaintiff. Tr. 328. Significantly, however, he did not conclude that plaintiff could not work. In fact, Dr. Fucetola offered many recommendations as to how plaintiff's job training might be more successful. Tr. 328-29.

Plaintiff criticizes the ALJ for failing to consider Dr. Fucetola's records as a whole. The Court finds, however, that the ALJ did not reject Dr. Fucetola's findings out of hand, and his treatment of them was proper. In his decision the ALJ wrote that Dr. Fucetola's test results must be considered with the generally unremarkable behavior observations the doctor made. Tr. 16. The ALJ noted that plaintiff "was reported to have been fully oriented in all spheres. His conversational speech was noted fluent and articulate without evidence of paraphrasic errors or abnormalities in intonation, rate, or volume. His thought processes were reported to appear organized, and there was

6

noted no evidence of a thought disorder. Finally, though there was evidence for occasional distractability, [plaintiff] was reported overall attentive throughout the evaluation process." Tr. 16. All of these observations are noted in Dr. Fucetola's report. The Court finds they are not inaccurate, and it was proper for the ALJ to have considered them in his decision.

The Court also finds the ALJ did consider and likely incorporate Dr. Fucetola's finding s in his RFC determination. The ALJ summarized in detail the medical evidence, including Dr. Fucetola's report and test results, and he then found "[plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] is able to perform simple tasks only which require no more than occasional contact with the general public and co-workers. [Plaintiff] is unable to perform high production rate jobs." Tr. 18. Finding plaintiff could only handle simple tasks and that he would be unable to perform high production rate jobs is consist with Dr. Fucetola's findings and opinion. The fact that the ALJ did not cite to Dr. Fucetola or other specific evidence for each limitation in the RFC "does not indicate that such evidence was not considered." Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010) (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)).

### C. Dr. Rehmani's Opinion

Plaintiff began treatment with Zafar Rehmani, M.D., a psychiatrist, beginning in October 2007. The Magistrate Judge summarized Dr. Rehmani's treatment as follows:

> [On October 22, 2007] Dr. Rehmani noted that plaintiff had difficulty getting up in the morning, that Ritalin knocked him out, that he damaged a bathroom door in eighth grade, and that he had fights during his freshman year of high school. (Tr. 476.) Given plaintiff's history of ADHD and bipolar disorder, Dr. Rehmani assessed

plaintiff with a GAF score of 50-60.[4] Dr. Rehmani changed plaintiff's medications. (Tr. 477.)

November 5, 2007 and November 19, 2010 progress notes from Dr. Rehmani stated that plaintiff was suffering from appetite disturbance, sleep disturbance, anergia, psychomotor retardation, psychomotor agitation, job/school performance problems, family relations problems, and impaired concentration. (Tr. 474-75.)

On January 9, 2008, plaintiff met with Dr. Rehmani and was feeling good, despite being unemployed, unable to find a job, and tired. (Tr. 473.) On January 25, 2008, plaintiff met with Dr. Rehmani and was sad and was crying at night. (Tr. 472.) On February 16, 2008, plaintiff was doing good, although Dr. Rehmani noted that plaintiff did not want to talk at times and had difficulty sitting still. (Tr. 471.) On March 5, 2008, plaintiff was still doing "good." (Tr. 470.) On April 2, 2008, Dr. Rehmani noted that plaintiff had trouble sitting still, and was using marijuana. (Tr. 469.) On April 30, 2008, plaintiff was "not so good," had been arrested, and was still using marijuana. (Tr. 468.) On May 28, 2008 and June 25, 2008, plaintiff was doing better. (Tr. 466-67.) On July 23, 2008, plaintiff was "not so good." Dr. Rehmani noted that plaintiff got easily frustrated, and had gotten angry and broken the lawnmower. (Tr. 465.) At his August 20, 2008, September 17, 2008, and October 15, 2008 appointments, plaintiff was doing "really good, "good,"and "fine," respectively. (Tr. 464-42.) On November 12, 2008, plaintiff forgot to take his medications, was still using marijuana, and could not control the urge to do so. (Tr. 461.) On December 10, 2008, Dr. Rehmani noted that plaintiff was doing "good," his mood had been good, and his work was going fine, despite suffering from ADHD and bipolar disorder. (Tr. 459-60.) On January 14, 2009, plaintiff was doing fine. (Tr. 458.) On each of his February, March, and April appointments, plaintiff was doing good. (Tr. 457-55.)

See Report and Recommendation, Doc. 31, at 10-11.

The Court finds the Magistrate Judge accurately summarized Dr. Rehmani's treatment records. In his decision, the ALJ relied on Dr. Rehmani's records. The ALJ wrote that while plaintiff was being treating for ADHD, the Dr. Rehmani's records consistently noted "no abnormalities in terms of the [plaintiff]'s ability to sustain attention and concentration." Tr. 16. Furthermore, the ALJ found that

---

[4]On the GAF scale, a score from 51-60 represents moderate symptoms (such as flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (such as few friends, conflicts with peers or co-workers). Diagnostic and Statistical Manual of Mental Disorders at 32-34.

the treatment notes from Dr. Rehmani indicate that plaintiff's symptoms were helped through medication. Id.

Plaintiff objects to the ALJ's and Magistrate Judge's characterization of Dr. Rehmani's medical records. More specifically, plaintiff points to the fact that on January 25, February 6, April 30, July 23, 2008 there were notations in Dr. Rehmani's records indicating that plaintiff's condition was not controlled or managed by medication. Again, plaintiff has pointed to some evidence that is contrary to the ALJ's decision, but there is substantial evidence in the record to support the ALJ's conclusions.

In reviewing the ALJ's decision, the Magistrate Judge acknowledged in his Report and Recommendation that plaintiff continued to report some difficulties while he was on medication, but that there was a trend of improvement which indicated that the medications were effective. The Court agrees with this characterization of the evidence. There were numerous notations in Dr. Rehmani's records, especially after December 2008, that plaintiff doing well when he took his medication. The Court finds that there is substantial evidence in the record to support the ALJ's conclusion that in Dr. Rehmani's records there is a relative lack of significant clinically findings to support the substantial impairments plaintiff claimed, and that plaintiff has acknowledged that his medications "definitely help." Tr. 19. Furthermore, the Court agrees with the Magistrate Judge that "[i]mpairments that are controllable or amenable to treatment do not support a finding of disability." Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998); Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997).

### D. Mr. Florian's Opinion

From October 2008 through at least May 2009, plaintiff received counseling from Peter A. Florian, M.A., a licensed psychologist.[5] With regard to Mr. Florian, the Magistrate Judge wrote:

> From October 22, 2008 to May 13, 2009, plaintiff visited Dr. Florian on 23 occasions. (Tr. 478-95.) On October 22, 2008, Dr. Florian noted plaintiff's drug and alcohol use. (Tr. 495.) On November 12, 2008, Dr. Florian noted that plaintiff was trying to quit using marijuana, but using it helped him sleep. (Tr. 492.) On November 24, 2008, Dr. Florian noted that plaintiff was still using marijuana, and was drinking because of stress. (Tr. 491.) On December 10, 2008, Dr. Florian again noted that plaintiff was using marijuana, and that he went to bed between 2 and 3 a.m. (Id.) On March 18, 2009, plaintiff told Dr. Florian that he felt shaky in the morning when waking up. (Tr. 484.) On April 22, 2009, Dr. Florian noted that plaintiff stated that he was not drinking anymore, and was using marijuana less, although he remained unmotivated. (Tr. 481.) On April 29, 2009, plaintiff told Dr. Florian that he quit using marijuana. (Tr. 480.)
>
> On November 12, 2008, Dr. Florian completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) form. (Tr. 493-94.) Dr. Florian opined that plaintiff's ability to follow work rules, relate to co-workers, and deal with the public was fair, while his ability to use his judgment, deal with work stresses, function independently, and maintain attention/concentration was poor or non-existent. Dr. Florian explained that plaintiff had a poor attention span, was impulsive, often exercised poor judgment, had learning disabilities, had poor perseverance with difficult tasks, would be lucky to make half of his appointments, was "anxious of new jobs and looking stupid," and quit or got fired by not showing up for his job. (Tr. 493.) Dr. Florian also noted that plaintiff had a fair ability to understand, remember and carry out simple job functions, but either a poor or no ability to understand, remember, and carry out either detailed or complex job instructions. Dr. Florian also opined that plaintiff had a good ability to maintain his personal appearance, a fair ability to behave in an emotionally stable manner and relate predictably in social situations, and either a poor or no ability to demonstrate reliability. With regard to these assessments, Dr. Florian explained that plaintiff was learning disabled and had ADHD, which allowed him to follow only one direction at a time, so long as he did not forget or become anxious. (Tr. 494.)

See Report and Recommendation, Doc. 31, at 12-13.
.

---

[5] Plaintiff's counsel, the ALJ, and Magistrate Judge refer to Peter Florian as a medical doctor. Mr. Florian does not have an M.D. or a Ph.D.; he has an M.A., and appears to be a licensed psychologist. Tr. 494.

The Court finds the Magistrate Judge's synopsis is accurate, with the noted exception that Mr. Florian is not a medical doctor. The ALJ wrote in his decision that he was giving "nominal weight" to the November 2008 report from Mr. Florian, in which the clinician stated that plaintiff had poor to no ability in regard to many of the mental aptitudes commonly associated with competitive employment. The ALJ found that the opinion was not supported by medically acceptable clinical or diagnostic data. Tr. 19. The ALJ wrote that Mr. Florian's treatment notes failed to reference any adverse mental status findings and rather they tended "to elaborate on the [plaintiff]'s reporting on continued alcohol and drug abuse." Tr. 19. The ALJ also noted that Dr. Rehmani provided plaintiff with care during the same time period and his treatment notes do not support such extreme limitations.

As the Eighth Circuit has stated, "[i]t is the ALJ's task to resolve conflicts in the evidence and issues of credibility." Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006) (citing Stephens v. Shalala, 46 F.3d 37, 39 (8th Cir.1995)). Here, the ALJ was presented with a Medical Assessment form, which was essentially a checklist with little or no medical findings, completed by plaintiff's treating psychologist, Mr. Florian, in which he opined plaintiff had significant work-related limitations. In general, a treating psychologist's opinion is given controlling weight, but is not inherently entitled to it. See 20 C.F.R. § 404.1527(d)(2); Hacker, 459 F.3d at 937. A treating psychologist's opinion is to be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record" Id.; 20 C.F.R. § 404.1527(d)(2) (emphasis added). As the Eight Circuit has instructed, a treating medical source's opinion does not automatically control because the record must be evaluated as a whole. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir.2005)

11

In his decision, the ALJ found that Mr. Florian's own treatment notes did not support the limitations noted in the Work Assessment form. The ALJ also found the limitations found in the form were inconsistent with the records from Dr. Rehmani, who was seeing plaintiff at approximately the same time. In essence, the ALJ credited the records of Dr. Rehmani, a treating psychiatrist, and Mr. Florian's own treatment notes over his Work Assessment form, which was little more than a checklist and not substantiated with clinical findings. The Court finds there was nothing improper about the ALJ's treatment of the evidence. Hacker, 459 F.3d at 938 ("[a] treating physician's own inconsistency may also undermine his opinion and diminish or eliminate the weight given his opinions"); Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000) ("[W]e have upheld an ALJ's decision to discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence ....") (internal quotations and citation omitted).

### E.  The ALJ's RFC Determination

Finally, plaintiff argues that the ALJ erred by failing to include in his RFC determination plaintiff's impairments with regard to memory, concentration, and attention. When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments and determine the claimant's RFC. Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Cunningham v. Apfel, 222 F.3d 496, 501 (8th Cir.2000). An RFC determination reflects what a claimant can do despite his or her limitations. 20 C.F.R. § 404.1545. "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." Baldwin, 349 at 356 (citing to Pearsall, 274 F.3d at 1218). An RFC must be based on all relevant

evidence, "including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." Id.

As stated above, the ALJ did rely on medical evidence, among other things, when making his RFC determination. The ALJ found plaintiff had the following medically determinable impairments: "Attention deficit hyperactivity disorder (ADHD), affective mood disorder, and polysubstance abuse." Tr. 17. He found "[plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] is able to perform simple tasks only which require no more than occasional contact with the general public and co-workers. [Plaintiff] is unable to perform high production rate jobs." Tr. 18.

The Court concludes that there was substantial evidence underlying the ALJ's decision to find plaintiff was capable of performing a full range of work with the above limitations. Furthermore, the RFC determination that plaintiff can only perform simply tasks supports a finding that plaintiff has problems with memory, concentration, and attention. The Court recognizes that there is some medical evidence supporting plaintiff's position that he is more limited, but this does not entitle the plaintiff to relief. Gates v. Astrue, 627 F.3d 1080, 1082 (8th Cir.2010); Guilliams v. Barnhart, 393 F.3d at 801 (even if inconsistent conclusions may be drawn from evidence, Commissioner's decision will be upheld if it is supported by substantial evidence on record as whole). The Court finds the ALJ's assessment of plaintiff's RFC was supported by substantial evidence in the record, and the Court declines to reverse his decision.

## II. Conclusion

Following de novo review of plaintiff's objections and the record, the Court finds that there is substantial evidence supporting the ALJ's decision to deny plaintiff's claims for disability insurance benefits and supplement security income.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's objections to the United States Magistrate Judge's Report and Recommendation are **OVERRULED.** [Doc. 32]

**IT IS FURTHER ORDERED** that the Report and Recommendation of the United States Magistrate Judge is **SUSTAINED, ADOPTED,** and **INCORPORATED** herein. [Doc. 31]

**IT IS FURTHER ORDERED** that the decision of the Commissioner denying plaintiff's application for supplemental security income benefits under Title XVI of the Social Security Act and application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq., is **AFFIRMED**.

An appropriate judgment will accompany this order.

                                              **CHARLES A. SHAW**
                                              **UNITED STATES DISTRICT JUDGE**

Dated this   31st   day of March, 2011.